HORNSBY, Chief Justice.
This case, submitted on briefs on February 9, 1989, involves the liability of landlords to the ten-year-old son of their tenants for injuries resulting from an allegedly undisclosed dangerous condition.
In February 1985, Mr. and Mrs. John Julian, Sr., were driving through Silverhill, Alabama, with their ten-year-old son, Johnny, and saw a house that they became interested in renting. After learning that Mr. and Mrs. Donald Linden owned the home, they sought out the Lindens and orally agreed to rent the home and some surrounding property for $150 per month.
In March, when it came time to mow the grass around the home, Mrs. Julian inquired of the Lindens about the yard and was told to assume responsibility for mowing “from the bushes to the highway, to the dirt road, from the highway back to the pecan trees.” Within this area[1] was a thicket, dense with undergrowth and small trees that concealed an old shed. In September 1985, Johnny Julian chased his puppy into the thicket and encountered the shed, rotting and dilapidated, for the first time. When his puppy ran into the shed, Johnny pulled himself up on an outside wall to try to see inside; some bricks over the opening where he had placed his hands to lift himself dislodged as the shed collapsed, and three of his fingers were severed.
Johnny Julian, by and through his mother, sued the Lindens on the theory that they had negligently failed to warn him of a known hidden danger, or that they had caused or permitted an inherently dangerous latent defect to exist on the leased premises. After all evidence was presented by both parties at trial, the trial court directed a verdict in favor of the defendants and entered judgment accordingly. The plaintiff’s motion for a new trial was denied, and he appealed.
Our standard of review in cases wherein the trial court has directed a verdict is narrow. If the non-moving party has failed to produce the requisite proof in support of his claim, a directed verdict is proper. Orr v. Turney, 535 So.2d 150 (Ala.1988).
Viewing the evidence most favorably to Johnny, we find that the shed that collapsed and caused his injury was indeed obscured by the surrounding thicket. Photographs introduced by Johnny bear out this fact. Furthermore, during the time that they lived on the premises, neither Johnny nor his mother knew that the shed even existed. Mr. Julian, however, had discovered the shed on one occasion and had observed that it was in a “dangerous” condition, but he had not communicated his finding to either Mrs. Julian or Johnny. Mr. Linden testified that he was aware of the existence of the building, that he was aware that it was in a dilapidated condition, and that he knew that it had been in a deteriorating state since as early as 1979.
In Dunson v. Friedlander Realty, 369 So.2d 792 (Ala.1979), we accepted as an accurate statement of Alabama law the view embraced by Restatement (Second) of Torts § 358 (1965). That section provides:
“§ 358. Undisclosed Dangerous Conditions Known to Lessor
*25 “(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
“(a) the lessee does not know or have reason to know of the condition or the risk involved, and
“(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk. “(2) If the lessor actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the [lessee] has had reasonable opportunity to discover the condition and to take such precautions.”
Applying that rule of law to the facts of this case, we conclude that, although the Lindens failed to disclose to the Julians the unreasonable risk of physical harm presented by the hidden deteriorating shed, the fact that Mr. Julian knew of the danger obviated the general requirement for disclosure. Because Mr. Julian observed and appreciated the danger, the duty[2] to warn shifted from the landlords to Mr. Julian. See Collier v. Duprel, 480 So.2d 1196 (Ala.1985). This is precisely what § 358(l)(b) of the Restatement contemplates. We conclude that the directed verdict against the plaintiff on this claim was not error.
Although it is not completely clear from the record, it appears that the plaintiff also tried this case on an attractive nuisance theory. Despite the fact that this theory was not pleaded, it was apparently presented without objection. We hold that this claim is untenable. It is undisputed that it was not the shed that attracted Johnny to the point of his injury; indeed, prior to the time, of his injury, he had no idea that the shed even existed. Rather, chasing his puppy is what brought Johnny to the point where his injury occurred. Under Alabama law, in order for an attractive nuisance claim to properly lie, the condition or instrumentality responsible for causing the injury must have attracted the child to come into contact with it. See Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976); City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964); Williams v. Bolding, 220 Ala. 328, 124 So. 892 (1929); Gandy v. Copeland, 204 Ala. 366, 86 So. 3 (1920). We conclude, therefore, that the trial court did not err in directing a verdict on the attractive nuisance claim.
Because the trial court did not err in directing a verdict in favor of the defendants on the Restatement (Second) of Torts § 358 theory and on the attractive nuisance theory, the judgment based on that directed verdict is affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., concurs in the result.

. In their answer to the complaint, the defendants admitted that the injury occurred as the result of "the collapse of a portion of a shSS or outbuilding situated upon the premises leased by [Mr. and Mrs.] Julian."

. This case involves the application of landlord-tenant law. Although that area of the law bears some similarity to the law of negligence, such as the existence of a "duty,” contributory negligence per se is not a defense in the classic landlord-tenant case, such as this one.